564 A.2d 498

**Vicki GWALTNEY and Charles Gwaltney, Her Husband, Appellants,**

**v.**

**Vincent Lee STONE, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued May 23, 1989.

Filed Sept. 13, 1989.

Irving M. Portnoy, Pittsburgh, for appellants.

James H. English, Asst. Dist. Atty., Altoona, for Stone, appellee.

Before OLSZEWSKI, MONTEMURO and KELLY, JJ.

KELLY, Judge:

In this opinion we are called upon to determine whether a cause of action, which accrued in Tennessee but was filed in Pennsylvania, was time-barred by the one year limitations period set forth in a Tennessee statute of limitations which applied in this Pennsylvania case pursuant to a Pennsylvania borrowing statute. For the reasons which follow, we find that the action was time-barred, and that the trial court properly dismissed the complaint. Accordingly, we affirm.

The facts and procedural history are not in dispute. Vicki Gwaltney and Charles Gwaltney, plaintiffs-appellants, are residents of Baltimore, Maryland. Vincent Lee Stone, Jr.,[1] defendant-appellee, is a resident of Blair County, Pennsylvania. On September 2, 1982, Mrs. Gwaltney was riding as a passenger in a vehicle proceeding along Interstate 81 when the vehicle was rearended by a vehicle driven by Mr. Stone. The accident occurred in Hamblen County, Tennessee.

A writ of summons was issued on August 6, 1984, twenty-three months after the accident, and was served upon Mr. Stone. Thereafter, on November 27, 1984, the Gwaltneys filed a complaint in Blair County, Pennsylvania, alleging negligence on behalf of Mr. Stone and requesting damages in excess of $10,000. On January 8, 1985, Mr. Stone filed an answer with new matter in which he alleged that the action was time-barred by Tennessee's statute of limitations as applied pursuant to Pennsylvania's borrowing statute. The Gwaltneys filed a reply on February 19, 1985, in which they asserted that the action was not time-barred because it was properly filed in Pennsylvania and within the applicable period pursuant to Pennsylvania's statute of limitations. On May 20, 1985, Mr. Stone filed a motion for judgment on the pleadings. On November 15, 1988, the trial court entered an order granting Mr. Stone's motion for judgment on the pleadings, and dismissing the Gwaltneys' complaint. The Gwaltneys filed this timely appeal.

The Gwaltneys' sole contention on appeal is that the trial court erred in applying Tennessee's statute of limitations to time-bar an action which was filed timely in Pennsylvania against a Pennsylvania resident as Tennessee's only contact with the instant action was the fortuitous happening of the incident there. We find that the trial court did not err.

Our standard of review of an appeal from a grant of a motion for judgment on the pleadings is well established. ... [W]e must accept as true all well-pleaded statements of fact of the party against whom the motion is granted

1. We note that Mr. Stone states that his proper name is Vincent Lee Stone, *Sr. See Defendant's Answer with New Matter* (filed 1/8/85).

and consider against him only those facts that he specifically admits. The parties cannot be deemed to admit either conclusions of law or unjustified inferences.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise. In conducting this inquiry, the court should confine its consideration to the pleadings and documents attached thereto.

*Jones v. Travelers Insurance Co.*, 356 Pa.Super. 213, 217, 514 A.2d 576, 578 (1986) (citations omitted).

We note initially that under the law of Pennsylvania, it is the duty of the one asserting a cause of action to use all reasonable diligence to inform himself or herself properly of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed statutory period. *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir.1985) (citing Pennsylvania cases). Mere mistake, misunderstanding or lack of knowledge on the part of the plaintiff is not sufficient to toll the running of the statute of limitations. *Ciccarelli v. Carey Canadian Mines, Ltd., supra.* Additionally, there is no absolute and unlimited constitutional right of access to courts; all that is required is a reasonable right of access, *i.e.* a reasonable opportunity to be heard. *Ciccarelli v. Carey Canadian Mines, Ltd., supra*, 757 F.2d at 554.

This Court has stated that the statute of limitations begins to run in a tort case when the cause of action accrues, meaning the date the injury is sustained. *Pounds v. Lehman*, 384 Pa.Super. 358, 361, 558 A.2d 872, 873 (1989), *quoting Larthey by Larthey v. Bland*, 367 Pa.Super. 67, 532 A.2d 456 (1987); *see also Mack Trucks, Inc. v. Bendix–Westinghouse Auto. A.B. Co.*, 372 F.2d 18, 20 (1966); *Rostron v. Marriott Hotels*, 677 F.Supp. 801, 802 (1987). "The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Pounds v. Lehman, supra; see also Mack Trucks, Inc. v. Bendix–Westinghouse Auto. A.B. Co.*,

*supra.* The general purpose of a limitations period is to balance the interests of a potential plaintiff in having a reasonable amount of time in which to pursue a legal claim against the potential defendant's right to be free from the vexation of dilatory or stale claims. *Pounds v. Lehman, supra,* 558 A.2d at 874; *see also* Comment, *The Impact of Significant Contacts on the Pennsylvania Borrowing Statute,* 72 Dick.L.Rev. 598, 599–600 (1968).

Instantly, the trial court held that the Tennessee one year statute of limitations was applicable, and therefore fully time-barred the Gwaltneys' cause of action. We agree.

The Tennessee statute of limitations was made applicable to the Gwaltneys' cause of action through the Pennsylvania borrowing statute, which provides:

(b) **General rule.**—The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, *whichever first bars the claim.*

42 Pa.C.S.A. § 5521(b). (Emphasis added). Tennessee has a one year statute of limitations for personal injuries:

**Personal tort actions.**—(a) Actions, for ... injuries to the person, ... whether said actions are grounded or based in contract or tort, civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes, and actions for statutory penalties shall be commenced within one (1) year after cause of action accrued.

Tenn.Code Ann. § 28–3–104 (1980). Pennsylvania has a two year statute of limitations for personal injuries:

The following actions and proceedings must be commenced within two years:

\*      \*      \*      \*      \*      \*

An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

\*      \*      \*      \*      \*      \*

42 Pa.C.S.A. § 5524(2). Therefore, in accordance with the mandate of the Pennsylvania borrowing statute, the trial court applied the Tennessee one year statute of limitations.

■ The Gwaltneys, however, argued that due to Mr. Stone's absence from Tennessee, the running of the Tennessee statute of limitations was tolled under Tennessee law. The Tennessee tolling statute provides:

> If at any time any cause of action shall accrue against any person who shall be out of this state, the action may be commenced within the time limited therefor, after such person shall have come into the state; and, after any cause of action shall have accrued, if the person against whom it has accrued shall be absent from or reside out of the state, the time of his absence or residence out of the state shall not be taken as any part of the time limited for the commencement of the action.

Tenn.Code Ann. § 28–1–111 (1980). The trial court, citing *Young v. Hicks*, 250 F.2d 80 (8th Cir.1957), held that the statute of limitations period was not tolled during Mr. Stone's absence from Tennessee because Tennessee provides for service of process of non-resident motorists pursuant to the following statute:

> **Pre-trial discovery depositions.**—(a)(1) Any owner, chauffeur or operator of any motor vehicle that is not licensed under the laws of this state, or any nonresident who, acting in behalf of the owner of any such vehicle, uses or causes to be used any such motor vehicle in this state, or any nonresident of the state of Tennessee who shall hire or procure the use of a motor vehicle licensed under the laws of this state for temporary use herein and who shall make use of the privilege hereby extended to nonresidents of the state to operate such vehicle on highway or highways within the state *shall be deemed thereby to constitute the secretary of state of this state his agent for acceptance of service of process in any civil action brought by any person against him arising out of any accident or injury occurring in this state in which such vehicle is involved;* ....

498

Tenn.Code Ann. § 20–2–203 (1980). (Emphasis added). Thus, Mr. Stone had a legal presence in Tennessee through the Secretary of State of Tennessee under Tennessee law throughout the time period in question.

Mr. Stone was not served by the Gwaltneys through the Tennessee Secretary of State. Instead, the Gwaltneys commenced their action in Pennsylvania against Mr. Stone twenty-three months after the accident occurred in Tennessee. Consequently, the trial court concluded, after application of the pertinent statutes, that the Gwaltneys' cause of action was time-barred.

On appeal, the Gwaltneys argue that the history and underlying purpose of the Non–Resident Motorist Statute render it inapplicable to the instant case. The Gwaltneys assert that the statute was promulgated to benefit the residents of Tennessee, not non-residents. *See Bertrand v. Wilds*, 198 Tenn. 543, 281 S.W.2d 390, 393 (1955). Additionally, the Gwaltneys assert that the statute's purpose was to benefit the injured person, not the person causing the injury. *See Anderson v. Outland*, 210 Tenn. 526, 360 S.W.2d 44, 47 (1962). Hence, the Gwaltneys claim that the trial court failed to recognize that the history and underlying purpose of the Non–Resident Motorist Statute rendered it inapplicable to the instant case and that, as a result, the Tennessee tolling statute tolled the limitations period. We find no merit to this claim.

A state has the power to forbid a non-resident to do acts within the state involving danger to life or property, unless he first consents to the exercise of jurisdiction of the courts of the state as to causes of action arising out of those acts. *Hess v. Pawloski*, 274 U.S. 352, 353, 47 S.Ct. 632, 633, 71 L.Ed. 1091, 1093 (1927) (upholding constitutionality of statute similar to Tennessee Non–Resident Motorist Statute). More specifically, a state, by legitimate exercise of its police power, may provide for the legal control over the motor vehicle itself or the non-resident motorist on its highways, in order to promote public convenience and safety on its highways. *Hess v. Pawloski, supra.* The Tennessee Non–

Resident Motorist Statute is similar to statutes of other states and "does not discriminate against non-resident motorists, but puts them on an equality with residents by making them suable in the State Courts in the same way as residents." *Anderson v. Outland, supra,* 360 S.W.2d at 47. The object of Non–Resident Motorist Statutes is to provide a method of notice reasonably calculated to afford parties interested in a judicial proceeding the opportunity to appear and be heard. *Massengill v. Campbell,* 391 F.2d 233 (5th Cir.1968) (construing Tennessee Non–Resident Motorist Statute).

While the Gwaltneys are correct that the Tennessee Non–Resident Motorist Statute was promulgated by the Tennessee legislature to benefit ultimately the residents of Tennessee, this does not mean, however, that the statute cannot be used by non-residents. Though not the motivation of the legislature, perhaps, the result assailed here is an unavoidable consequence of its principle desired effect, *i.e.,* in-state alternate service of process upon non-residents. The Gwaltneys could properly have used this statute to obtain substituted service of process upon Mr. Stone if they had filed their civil action (as they could have) in Tennessee.[2] There is no doubt that Mr. Stone was subject to service of process in Tennessee; consequently, his non-residence provides no reasonable basis for a conclusion that the applicable one year statute of limitations in Tennessee could be deemed to have been tolled during that period. *See Young v. Hicks, supra; Mangene v. Diamond,* 132 F.Supp. 27 (1955), *aff'd* 229 F.2d 554 (1956) (statute of limitations did not toll during absence of non-resident due to substitute service available through California Non–Resident Motorist Act); *Rockmore v. McCullough,* 17 Cumb. 168 (Pa.Com.Pl.1967) (Connecticut tolling statute did not apply due to provision in Non–Resident Motorist Statute for substituted service of process upon Commissioner of Motor Vehicles).

**2.** Obviously, such substituted service of process was not necessary in Pennsylvania as Mr. Stone was a resident of Blair County, Pennsylvania, the forum in the case *sub judice.*

■ The Gwaltneys argue, in the alternative, that insufficient minimum contacts exist with Tennessee to permit the law of Tennessee to control. The Gwaltneys cite *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) and *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964) to support their argument that the concept of significant contacts must be applied, and that an interest analysis is the proper modum for determining a conflicts of law problem. We do not agree.

In *Allstate Insurance Co. v. Hague, supra,* despite obvious "most significant contacts" with Wisconsin, the United States Supreme Court held that the application of Minnesota insurance law to a cause of action filed in Minnesota but involving a Wisconsin automobile accident between then Wisconsin residents did not violate the full faith and credit clause or the due process requirement of the Fourteenth Amendment. Thus, the most significant contacts test for conflicts of law problems is not constitutionally required.

It is true, as the Gwaltneys note, that in *Griffith v. United Air Lines, supra,* our Supreme Court abandoned the traditional conflicts rule of strict *lex loci delicti* and adopted a more flexible rule which permitted analysis of the policies and interests underlying the particular issue before the court. *Griffith,* however, in no way suggests strict substitution of a "most significant contacts" test for the former rule of *lex loci delicti.* The Gwaltneys' claim that *Griffith v. United Air Lines, supra,* coupled with *Allstate Insurance Co. v. Hague, supra,* support their proposition that Pennsylvania had the "most significant contacts" with the case *sub judice* and, therefore, use of Pennsylvania's borrowing statute to apply the Tennessee statute of limitations to time-bar an action timely commenced within Pennsylvania's statutory limitations period contravenes constitutional and equitable principles. We find the Gwaltneys' argument unsupported by the cases cited and unpersuasive.

■ Borrowing statutes similar to the one adopted in Pennsylvania have been enacted for the following general reasons: (1) to create a uniform system of conflict of laws

dealing with statutes of limitations; (2) to prevent forum shopping; (3) to remove the possibility of perpetual liability; and (4) to benefit residents of the enacting state. Comment, *supra*, 72 Dick.L.Rev. at 607. The primary effect of borrowing statutes is to prevent a plaintiff from gaining more time to bring an action merely by suing in a forum other than the forum where the cause of action accrued. *Patch v. Playboy Enterprises, Inc.*, 652 F.2d 754, 756 (8th Cir.1981); *see also Harper v. Gibson*, 601 F.Supp. 156 (W.D.Miss.1985). The provisions of Pennsylvania's borrowing statute unequivocally evince the legislative intent to prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose. *Wilt v. Smack*, 147 F.Supp. 700, 704 (E.D.Pa.1957).

Pennsylvania's borrowing statute provides that for claims *accruing* outside of Pennsylvania, the period of limitations shall be prescribed by the limitations period of the place where the claim accrued or by the law of Pennsylvania, whichever is *shorter*. Under Pennsylvania law, a claim *accrues* when and where the injury is sustained. The accident occurred in Tennessee; hence, the cause of action *accrued* in Tennessee. Pursuant to the Pennsylvania borrowing statute, the Tennessee one year statute of limitations is the proper limitations period to be applied in the case *sub judice*. *Cf. Patch v. Playboy Enterprises, Inc., supra*, (under Missouri borrowing statute, a cause of action which originated in Illinois but brought in Missouri was subject to Illinois one year statute of limitations); *Mack Trucks, Inc. v. Bendix–Westinghouse Auto. A.B. Co., supra*, (Pennsylvania borrowing statute made Florida law applicable and action was dismissed as barred by Florida statute of limitations); *Young v. Hicks, supra*, (action brought in Missouri for accident in Tennessee which involved a Pennsylvania defendant was time-barred by Tennessee statute of limitations made applicable through Missouri borrowing statute); *Mangene v. Diamond, supra*, (Pennsylvania borrowing statute made California statute of limitations applicable, thus action was time-barred); *Ros-*

*tron v. Marriott Hotels, supra,* (Pennsylvania borrowing statute made California limitations law applicable, and action was thus untimely, although it would have been timely if Pennsylvania limitations period had been applied); *Giacobbe v. Celotex Corp.,* 629 F.Supp. 827 (1985) (applicable New York statute of limitations time-barred the cause of action, even though the suit might not have been time-barred under the Pennsylvania discovery rule); *see also Wilt v. Smack, supra,* (defense of Pennsylvania borrowing statute is available only against action fully barred by law of state in which cause of action arose).

The "most significant contacts" test is a rule of deference for determining which forums' law should be applied when more than one forum has "sufficient minimum contacts" to permit the exercise of jurisdiction and the applicable laws of the forums differ. Such a choice of laws is not necessary here. Even if Pennsylvania in fact had the most significant contacts, *Pennsylvania's* borrowing statute would still require application of *Tennessee's* shorter limitations period, based upon *Pennsylvania's* determination that the limitations period applicable in Pennsylvania should not exceed that applicable at the situs of the accrual of the cause of action. Nothing in the cases cited, or the state and federal constitution, precludes our legislature from making such a *policy choice.* Hence, the challenge fails.

In summary, we find that the trial court properly granted Mr. Stone's motion for judgment on the pleadings. The accident occurred in Tennessee. Hence, the cause of action accrued in Tennessee. The Pennsylvania borrowing statute makes the shorter Tennessee statute of limitations applicable. The Tennessee tolling statute was not applicable because Mr. Stone was amenable to service pursuant to the Tennessee Non–Resident Motorist Statute. The Gwaltneys commenced suit twenty-three months after the accident in Tennessee. The Tennessee one year statute of limitations fully barred the Gwaltneys' civil action. Therefore, the trial court correctly granted Mr. Stone's motion for judgment on the pleadings.

Accordingly, we AFFIRM the order of the trial court.