**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3337
_____

SHELDON STEPHENS,
Appellant

v.

KEVIN CLASH
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 1-13-cv-00712
District Judge: The Honorable Christopher C. Conner

Argued March 18, 2015

Before: SMITH, JORDAN, and SLOVITER,
*Circuit Judges*

(Opinion Filed:  August 5, 2015)


Stuart S. Mermelstein          **[ARGUED]**
Herman Law
3351 Northwest Boca Raton Boulevard

Boca Raton, FL  33431

    *Counsel for Appellant*

Michael G. Berger          **[ARGUED]**
20th Floor
250 Park Avenue
New York, NY  10177

    *Counsel for Appellee*

_____

OPINION

_____

SMITH, *Circuit Judge.*

Plaintiff Sheldon Stephens appeals the dismissal of his claims against Defendant Kevin Clash for injuries resulting from the parties' sexual relationship while Stephens was underage, in violation of 18 U.S.C. § 2422, 18 U.S.C. § 2423, and state law.  The District Court dismissed Stephens's claims as untimely.  For the reasons that follow, we will affirm.

**I.**

Because the District Court dismissed both Stephens's complaint and his amended complaint on motions pursuant to Federal Rule of Civil Procedure 12(b)(6), the facts recited here are drawn from those pleadings.  Kevin Clash is "an

internationally-known puppeteer and voice actor for children's programming," best known for his role as the voice of *Sesame Street*'s Elmo. A42, A52. Stephens and Clash met at a "social networking event for models and actors" in 2004 when Stephens was 16 years old and Clash was approximately 44. A43, A56. According to Stephens, "[f]rom their earliest conversations, Clash led [Stephens] to believe that [Clash] was interested in having a sexual relationship" with Stephens. A44, A54. Clash arranged by telephone on several occasions to have Stephens transported from Harrisburg, Pennsylvania to New York City by chauffeured car for the purpose of a sexual relationship. The two engaged in a "pattern of sexual activity . . . over a period of years." A44, A54.

Although he was "a compliant victim showered with attention and affection," Stephens contends that he "did not become aware that he had suffered adverse psychological and emotional effects from Clash's sexual acts and conduct until 2011." A45, A55. According to Stephens, because of his "compliance with the sexual relationship" and the "attention and affection" Clash gave him, Stephens "could not reasonably have been expected to know that he had been injured and that Clash had caused his injuries at the time of their sexual contact." A45, A55.

On the other hand, as stated in the amended complaint, Clash "compelled [Stephens] to engage in sexual contacts by intellectual, emotional and psychological force." A56. Clash did so by "ingratiat[ing] himself to [Stephens] through [Clash's] wealth and celebrity with knowledge that [Stephens] wanted to enter the modeling industry." *Id.*

3

Taking advantage of Stephens's "low self-esteem and depression," Clash then "dominate[d] [Stephens] in a sexual relationship." *Id.*

Stephens eventually sued in March 2013—approximately nine years after the parties' relationship began, and seven years after Stephens turned 18 in 2006—bringing claims pursuant to 18 U.S.C. § 2255(a)[1] as well as a sexual battery claim under state law. Clash moved to dismiss the complaint on statute of limitations grounds, and the District Court dismissed Stephens's federal claims as untimely. In doing so, the District Court assumed the discovery rule applied generally to § 2255 claims but held that Stephens's complaint demonstrated that he "discovered or should have discovered his injury in or before July 2006," thus rendering his federal claims untimely. A26. But the District Court permitted Stephens to amend his complaint as to his state law claim. The District Court then granted Clash's second motion to dismiss Stephens's state law claim as untimely. Applying

---

[1] Section 2255 creates a private cause of action for several federal crimes if the victim was a minor, including violations of 18 U.S.C. § 2422 and 18 U.S.C. § 2423. In general, § 2422 criminalizes knowingly persuading, inducing, enticing, or coercing an individual to travel in interstate commerce "to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(a). Similarly, § 2423 criminalizes, *inter alia*, the knowing transportation of a minor in interstate commerce "with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." *Id.* § 2423(a).

4

Pennsylvania's borrowing statute, 42 Pa. Cons. Stat. Ann. § 5521(b), the District Court looked to New York's one-year statute of limitations for battery claims, N.Y. C.P.L.R. 215(3), and New York's tolling statute for claims that accrue during infancy, N.Y. C.P.L.R. 208. Under New York law, Stephens's sexual battery claim was time-barred. Stephens appeals these dismissals, urging that the discovery rule tolled the statute of limitations for his federal claims and that Pennsylvania's longer statute of limitations for childhood sexual abuse should have applied to his sexual battery claims.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, as well as 28 U.S.C. § 1331 regarding Stephens's federal claims. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## A.

We first examine whether the discovery rule is applicable to claims brought under § 2255. In general, the discovery rule "tolls the limitations period until the plaintiff learns of his cause of action or with reasonable diligence could have done so" and "is an exception to the usual principle that the statute of limitations begins to run immediately upon accrual regardless of whether or not the injured party has any idea what has happened to him." *William A. Graham Co. v. Haughey* (*Graham II*), 646 F.3d 138, 141, 150 (3d Cir. 2011). To determine whether the discovery rule is available, we look to whether Congress intended that the discovery rule would not apply, either "by

explicit command or by implication from the structure and text of the statute," in which case we defer to that directive. *William A. Graham Co. v. Haughey* (*Graham I*), 568 F.3d 425, 434 (3d Cir. 2009) (quoting *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 209 (3d Cir. 2008)) (internal quotation marks omitted).[2]  But "[i]n the absence of a contrary directive from Congress, we apply the federal discovery rule."  *Id.* (alteration in original) (quoting *Disabled in Action*, 539 F.3d at 209) (internal quotation marks omitted).

We begin with the statute's text.  At the time Stephens filed his complaint, § 2255 provided that "[a]ny action commenced under this section shall be barred unless the complaint is filed within six years after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability."  18 U.S.C.

---

[2] *Graham I* described this inquiry as analyzing whether Congress had "specified an accrual date."  *Graham I*, 568 F.3d at 434 (quoting *Disabled in Action*, 539 F.3d at 209). But as we clarified in *Graham II*, the discovery rule is a tolling rule, not a rule of accrual.  *Graham II*, 646 F.3d at 150.  Assessing Congress's intent in relation to the discovery rule therefore requires us to look to its intent regarding tolling, not claim accrual.  *Cf. id.* at 147, 150 ("Rules regarding limitations periods do not alter substantive causes of action.  Accordingly we do not think the discovery rule should be read to alter the date on which a cause of action accrues.").

6

§ 2255(b) (2012).[3]   Missing from this text is an explicit command not to apply a discovery rule.  Although the statute requires that the complaint be filed "within six years after the right of action first accrues," *id.*, the text does not expressly foreclose application of the discovery rule.   Indeed, confronted with the Copyright Act's similar language, we held the discovery rule applicable.  *See Graham I*, 568 F.3d at 433 (addressing text providing that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued" (alteration in original) (quoting 17 U.S.C. § 507(b))); *cf. Urie v. Thompson*, 337 U.S. 163, 169–70 (1949) (analyzing 45 U.S.C. § 56 under which "[n]o action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued" and applying discovery rule).  The simple fact that Congress, in drafting the statute, did not include express language of discovery is not equivalent to an explicit command that the discovery rule does not apply.

Nor does the "structure and text" of § 2255 imply a Congressional directive not to apply the discovery rule.  *See Graham I*, 568 F.3d at 434; *cf. Smith v. Doe*, 538 U.S. 84, 92 (2003) (for questions of statutory construction, "[w]e consider the statute's text and its structure to determine the legislative

---

[3] In 2013, Congress amended § 2255(b) to extend the limitations period from six years to ten years.  Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 1212(a)(2), 127 Stat. 54, 143 (codified as amended at 18 U.S.C. § 2255(b)).   Stephens concedes that this amendment did not revive his federal claims.

objective"); *United States v. Tupone*, 442 F.3d 145, 151 (3d Cir. 2006) ("[T]he text of a statute must be considered in the larger context or structure of the statute in which it is found."). To the contrary, the statutory scheme supports the discovery rule's applicability. Section 2255 is an umbrella statute that creates a private cause of action for several crimes if the perpetrator victimizes a minor. *See* § 2255(a) (listing criminal statutes). Congress's prime objective when it first passed § 2255 as part of the Child Abuse Victims' Rights Act of 1986 was to reach crimes related to child pornography. Pub. L. No. 99-500, § 703(a), 100 Stat. 1783 (listing only 18 U.S.C. §§ 2251, 2252). Congressional findings also described § 2255 as an attempt to address the "multi-million dollar" child-exploitation industry, along with the "physiological, psychological, and emotional harm caused by the production, distribution, and display of child pornography" and the "lack [of] effective remedies under Federal law" available to "exploitation victims." *Id.* § 702(1)–(3); *see also* S. Rep. No. 99-504, at 5 (1986) (noting that "child pornography victims have no real vehicle for adequate victim compensation" and therefore "are not adequately compensated for the substantial mental or emotional harms suffered as a result of being victimized"); S. Rep. No. 99-425, at 87 (1986) (same).

Yet this objective, particularly with regard to remedying the harms caused by the distribution of child pornography, would be thwarted without the discovery rule. Specifically, § 2255 creates a civil remedy for, *inter alia*, knowingly transporting, receiving, or selling visual depictions "involv[ing] the use of a minor engaging in sexually explicit conduct." § 2255(a); §§ 2252(a)(1)–(3). Violations do not

8

depend on the victim's knowledge of such distribution. Instead, the focus is on the distributor's conduct. Indeed, child pornography is most often distributed in secret and without the victim's immediate knowledge, with no fault attributable to the exploited minor. Nevertheless, each act of distribution injures the child pornography victim such that "an omniscient plaintiff" would have a provable cause of action upon the completion of the act. *See Graham II*, 646 F.3d at 146 (claim has accrued when "all of its elements have come into existence"); *see also New York v. Ferber*, 458 U.S. 747, 759 (1982) (distribution of child pornography "is intrinsically related to the sexual abuse of children" because "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation"); *United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007) ("The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials."). Thus, without the discovery rule, civil redress would be unavailable to those victims of child pornography who are unaware during the statutory period of the distribution of visual depictions of their sexual abuse. Given that Congress intended § 2255 to create a remedy for these very victims, the structure and text of § 2255 supports recognition of the discovery rule for § 2255 claims.

Our approach in concluding that the discovery rule is applicable here is consistent with that taken by our sister circuits when considering whether the discovery rule applies to other federal statutes. For example, the Second Circuit agreed with our conclusion in *Graham I* that the rule applied to Copyright Act claims. *Psihoyos v. John Wiley & Sons,*

9

*Inc.*, 748 F.3d 120, 124–25 (2d Cir. 2014). Further, *Psihoyos* noted that the discovery rule may apply "where precedent, structure and policy all favor such a rule" despite the absence of express language in the statute adopting the discovery rule. *Id.* at 124 n.5.[4] Other circuits have charted a similar course. *See, e.g.*, *Maverick Transp., LLC v. U.S. Dep't of Labor, Admin. Review Bd.*, 739 F.3d 1149, 1154 (8th Cir. 2014) (noting that the Supreme Court has not "invalidate[d] the presumption of reading the discovery accrual rule into federal statutes" and therefore "[i]n federal question cases, the discovery rule applies in the absence of a contrary directive from Congress" (quoting *Comcast of Ill. X v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 944 (8th Cir. 2007))); *Skwira v. United States*, 344 F.3d 64, 73–74 (1st Cir. 2003) (holding discovery rule applicable to wrongful death claims under the Federal Tort Claims Act (FTCA) despite statutory language

---

[4] The Second Circuit also rejected the proposition that the Supreme Court's decision in *Gabelli v. SEC*, 133 S. Ct. 1216 (2013), altered this analysis. We agree. In *Gabelli*, the Supreme Court declined to apply the "fraud discovery rule" to SEC enforcement actions for civil penalties under the Investment Advisers Act of 1940, 15 U.S.C. § 80b-6(1), (2). 133 S. Ct. at 1221. In doing so, the Court noted that "[a]pplying a discovery rule to Government penalty actions is far more challenging than applying the rule to suits by defrauded victims" given the significant differences between an SEC enforcement action and an individual victim's civil suit. *Id.* at 1222–24. *Gabelli* thus provides little support for the conclusion that the discovery rule does not apply to an individual's § 2255 claim.

indicating that such claims "shall be forever barred" absent written notice "within two years after such claim accrues" (quoting 28 U.S.C. § 2401(b))); *cf. Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1267–68 (10th Cir. 2002) (noting that "the general statute of limitations accrual rule in non-medical malpractice FTCA cases remains the injury occurrence, and not the discovery rule" but applying the discovery rule to a negligence claim because the evidence demonstrated that "the plaintiffs could not have immediately known of the injury").

Clash argues that we should adopt the rationale expressed in *Singleton v. Clash*, 951 F. Supp. 2d 578 (S.D.N.Y. 2013), *aff'd sub nom. on other grounds*, *S.M. v. Clash*, 558 F. App'x 44 (2d Cir. 2014),[5] and reject application of the discovery rule to § 2255 claims. *Singleton* involved essentially identical claims brought against Clash by three other plaintiffs. *Id.* at 582–83. The district court in *Singleton* held the discovery rule inapplicable to § 2255 claims in part because Congress "could have adopted language similar to that in state sexual abuse statutes which expressly provide for the discovery rule," yet did not. *Id.* at 587. As noted above, however, the weight of authority rejects the proposition that Congress must have expressly adopted the discovery rule for

---

[5] By nonprecedential summary order, the Second Circuit "assum[ed] without deciding that a discovery accrual rule applies to § 2255(b)" and affirmed the district court's dismissal on the alternative ground that "the plaintiffs' complaints failed to provide any reason why the plaintiffs were unable to discover their injuries prior to 2012." *S.M.*, 558 F. App'x at 45.

11

that rule to apply. *See, e.g.*, *Psihoyos*, 748 F.3d at 124–25 & n.5; *Graham I*, 568 F.3d at 433–437.

*Singleton* also relied on § 2255(b)'s express exception to the statute of limitations, which permits an action to be commenced "in the case of a person under a legal disability, not later than three years after the disability." *See Singleton*, 951 F. Supp. 2d at 586. According to *Singleton*, "this exception is plainly crafted to afford minors at least three years after attaining the age of eighteen to contemplate whether they choose to sue for conduct committed against them while they were minors." *Id.* Thus, *Singleton* explains, the exception "counsels against implying an additional discovery rule into the statute." *Id.*

We disagree. Section § 2255(b)'s exception suggests that Congress considered tolling in instances where the victim's status prevents him from filing a timely lawsuit—for example, if the victim is still a minor when the six-year statute of limitations would otherwise have run. But the inclusion of an exception for infancy and other legal disabilities does not speak to whether Congress considered and rejected the discovery rule, a conceptually distinct tolling doctrine that does not depend on the victim's legal status but instead depends on when the victim "discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Graham I*, 568 F.3d at 438 (quoting *Disabled in Action*, 539 F.3d at 209). Because the text and structure of § 2255 as described above supports application of the discovery rule, we conclude that Congress's inclusion of a limited exception to the six-year statute of limitations for

12

those under a legal disability does not indicate that Congress also intended to exclude the discovery rule.

To be sure, if Congress had expressly incorporated a limited *discovery* rule, or perhaps another entirely "judge-made doctrine" tolling the statute of limitations, like equitable estoppel, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 n.5 (2001), that inclusion might indicate "that Congress [had] implicitly excluded a general discovery rule," *id.* at 28. But Congress did not do so here, nor does a general discovery rule "in practical effect render [the exception for legal disabilities] entirely superfluous in all but the most unusual circumstances." *See id.* at 29. Indeed, the discovery rule and a three-year extension for victims under a legal disability operate independently. For example, if only the discovery rule were available, a victim under 12 years of age would be required to bring his claims while he was still a minor if he was aware of his injury at the time of his abuser's conduct. Giving such victims a three-year extension after turning 18 years old is hardly superfluous, nor is this independent application of § 2255's exception for those victims under a legal disability unlikely to occur "outside the realm of theory." *See id.* at 30. For these reasons, we hold that the discovery rule is applicable to § 2255 claims.

**B.**

Despite this holding, however, the discovery rule does not save Stephens's federal claims. A statute of limitations defense is an affirmative defense that a defendant must usually plead in his answer. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Nevertheless, "we permit a limitations

13

defense to be raised by a motion under Rule 12(b)(6) only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)) (internal quotation marks omitted). Thus, a district court may grant a motion under Rule 12(b)(6) raising a limitations defense if "the face of the complaint" demonstrates that the plaintiff's claims are untimely. *Id.* (quoting *Robinson*, 313 F.3d at 134–35). But federal courts "may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Id.* at 251–52. Thus, if "the pleading does not reveal when the limitations period began to run," then "the statute of limitations cannot justify Rule 12 dismissal." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011).

Stephens's complaint demonstrates that his claims are not timely, even applying the discovery rule. As noted above, under the discovery rule the statute of limitations begins to run "when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Graham I*, 568 F.3d at 433 (quoting *Disabled in Action*, 539 F.3d at 209). A plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured. *Kach v. Hose*, 589 F.3d 626, 635 (3d Cir. 2009) (statute of limitations begins to run "even though the full extent of the injury is not then known or predictable" (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)). "Were it otherwise, the statute would begin to run

14

only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391.

Here, Stephens's allegations demonstrate that he was aware that Clash had inflicted an injury at least as of the time Stephens willingly engaged in sexual relations with Clash. From the outset, "Clash led [Stephens] to believe that [Clash] was interested in having a sexual relationship." A44, A54. Stephens willingly traveled from Harrisburg to New York City at Clash's request. Stephens then became a "compliant victim" of Clash's sexual advances. A45, A55. Stephens's complaint thus indicates that he was cognizant at all times of the sexual abuse from which he contends he suffered an injury. Indeed, Clash's nonconsensual[6] sexual contact with Stephens itself inflicted an injury, regardless of Stephens's willing participation or any additional, latent psychological or emotional injuries that Stephens may have suffered at the time of the abuse, or even later in life. Much like a typical battery under state law, Stephens's complaint demonstrates that he was aware that his legal rights had been violated and he had suffered an injury at the time he and Clash consummated their sexual relationship, even if he did not fully appreciate all of the consequences of that violation. *See Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997) ("In a typical battery all the elements of the offensive touching will be present and ascertainable by the plaintiff at the time of the touching itself."); *see also* Black's Law Dictionary 905 (10th

---

[6] By reason of Stephens's minority status.

15

ed. 2014) (defining "injury" as "[t]he violation of another's legal right, for which the law provides a remedy").

Given that § 2255 creates a cause of action only for criminal violations occurring while the victim was a minor, Clash's sexual relationship with Stephens was no longer actionable under § 2255 after Stephens turned 18 years of age in 2006. Yet despite Stephens's awareness of his sexual relationship with Clash, Stephens did not bring suit until 2013, after the six-year statute of limitations had expired and also more than three years after Stephens became an adult. Accordingly, neither the discovery rule nor § 2255's three-year extension for persons under a legal disability saves Stephens's federal claims.

## III.

Finally, we address Stephens's argument that the District Court erred in dismissing his state law claim for sexual battery as untimely. "[A] federal court must apply the substantive laws of its forum state in diversity actions, and these include state statutes of limitations." *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) (citations omitted); *see also Ross v. Johns-Manville Corp.*, 766 F.2d 823, 826 (3d Cir. 1985) (federal courts sitting in diversity follow "the forum's choice of law rules to determine the applicable statute of limitations"). Accordingly, because Stephens filed his complaint in the Middle District of Pennsylvania, we apply Pennsylvania law to determine the applicable statute of limitations.

16

Under Pennsylvania's borrowing statute, otherwise known as the Uniform Statute of Limitations on Foreign Claims Act, "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim."  42 Pa. Cons. Stat. Ann. § 5521(b).  The parties agree that Stephens's sexual battery claim accrued in New York.  Under New York law, battery claims "shall be commenced within one year."  N.Y. C.P.L.R. 215(3).  By contrast, under Pennsylvania law, actions for battery "must be commenced within two years."  42 Pa. Cons. Stat. Ann. § 5524(1).

On its face, New York's statute of limitations is shorter than Pennsylvania's, suggesting that New York's statute of limitations should govern.  Indeed, Stephens agrees that New York's one-year statute of limitations is the applicable "period of limitation" in this case.  But Stephens argues that the borrowing statute's reference to "period of limitation" does not include the tolling rules used to determine when the period of limitation has run.  He argues that we should apply Pennsylvania's rather than New York's tolling rules.  We need not resolve this question.  Stephens concedes that his sexual battery claim is timely only if Pennsylvania's statute governing claims alleging childhood sexual abuse, 42 Pa. Cons. Stat. Ann. § 5533, extends the time in which he may bring his claim.  Without the benefit of § 5533, Stephens's claims are time-barred under New York's one-year statute of limitations.  In that regard, § 5533 provides that

17

If an individual entitled to bring a civil action arising from childhood sexual abuse is under 18 years of age at the time the cause of action accrues, the individual shall have a period of 12 years after attaining 18 years of age in which to commence an action for damages regardless of whether the individual files a criminal complaint regarding the childhood sexual abuse.

42 Pa. Cons. Stat. Ann. § 5533(b)(2)(i).

Although Stephens characterizes this statute as a tolling provision, a close reading of the text indicates that § 5533(b)(2)(i) defines an entirely separate period of limitations for claims of childhood sexual abuse. In general, tolling rules prevent the applicable statute of limitations from running despite an accrued cause of action. *See Graham II*, 646 F.3d at 147 ("There exist, however, various statutory and judge-made rules that operate to toll the running of the limitations period—that is, 'to stop [its] running'; 'to abate it', or '[t]o suspend or interrupt' it." (alterations in original) (citations omitted)). Thus, "[t]ime that passes while a statute is tolled does not count against the limitations period." *Id.* at 147–48. For example, under Pennsylvania law, infancy tolls the statute of limitations, but does not create a new period of limitations for minor plaintiffs. 42 Pa. Cons. Stat. Ann. § 5533(b)(1)(i) ("If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced.").

18

This is not how § 5533(b)(2)(i) operates. Rather than exclude a period of time from Pennsylvania's otherwise applicable two-year statute of limitations, § 5533(b)(2)(i) establishes "a period of 12 years after attaining 18 years of age in which to commence an action for damages" for claims of childhood sexual abuse. Instead of merely tolling the two-year statute of limitations, § 5533(b)(2)(i) supplants the existing statute of limitations for battery claims. The extended statute of limitations for childhood sexual abuse claims is entirely independent of the two-year provision applicable to battery claims that do not constitute childhood sexual abuse.

Thus, regardless of which state's tolling doctrines apply under Pennsylvania's borrowing statute, the borrowing statute still renders Stephens's claims untimely. Under the borrowing statute, we must apply the "period of limitation" that "first bars" Stephens's state law claim. Stephens turned 18 in 2006, and thus any sexual relationship continuing beyond that date would not constitute the abuse of a minor. Stephens did not file his complaint until 2013, well after the expiration of New York's one-year statute of limitations. Given that § 5533(b)(2)(i) establishes a longer period of limitations for childhood sexual abuse claims and is not a tolling doctrine, New York's statute of limitations "first bars" Stephens's sexual battery claim, regardless whether Pennsylvania's or New York's tolling rules apply. Thus, the District Court properly dismissed that claim as time barred.

Pennsylvania case law also supports this reading of § 5533(b)(2)(i) in conjunction with Pennsylvania's borrowing statute. "The primary effect of borrowing statutes is to

19

prevent a plaintiff from gaining more time to bring an action merely by suing in a forum other than the forum where the cause of action accrued." *Gwaltney v. Stone*, 564 A.2d 498, 501 (Pa. Super. Ct. 1989). Thus, "[t]he provisions of Pennsylvania's borrowing statute unequivocally evince the legislative intent to prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose." *Id.* (citing *Wilt v. Smack*, 147 F. Supp. 700, 704 (E.D. Pa. 1957)). Applying § 5533(b)(2)(i) to Stephens's state law claim thus would not only contravene the text of Pennsylvania's borrowing statute, but would also grant Stephens greater rights than he would have had if he had pursued his claim in New York, the state in which his claim accrued. We do not believe that Pennsylvania's legislature intended that result.[7]

## IV.

For these reasons, we will affirm the District Court's dismissal of Stephens's complaint and amended complaint.

---

[7] We note that some Pennsylvania courts have described § 5533(b)(2)(i) in dicta as a tolling doctrine. *See, e.g.*, *Delaney v. Archdiocese of Phila.*, 924 A.2d 659, 662 n.1 (Pa. Super. Ct. 2007); *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 274 n.1 (Pa. Super. Ct. 2005). But those decisions did not discuss § 5533(b)(2)(i) in connection with Pennsylvania's borrowing statute, nor was the difference between a tolling provision and a statute establishing a different period of limitation important to the outcome of those cases. Therefore, we find their persuasive value on this point to be limited.

20

*Stephens v. Clash*, No. 14-3337
JORDAN, *Circuit Judge*, Concurring:

I concur in the outcome of this case and with most of what my colleagues have said in reaching that outcome. I part company, though, with the Majority's decision to reach the issue of whether the discovery rule is available under 18 U.S.C. § 2255(b). Because the discovery rule does not save Stephens's claims, the discussion of § 2255(b) is dicta, and it is dicta as to which I have some doubt.

As noted in the Majority opinion, § 2255(b) provides that "[a]ny action commenced under this section shall be barred unless the complaint is filed within six years after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability." This legal disability exception is not a tolling provision. It does not toll, stop, abate, suspend, or interrupt the limitation period. Rather, it provides a separate limitation period for cases involving legal disability. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir. 2011) (noting that tolling provisions "operate to toll the running of the limitations period – that is, to stop [its] running; to abate it, or [t]o suspend or interrupt it" (alterations in original) (citation and internal quotation marks omitted)). In short, the three-year legal disability provision in § 2255(b) operates like the twelve-year infancy provision in Pennsylvania law, which the Majority recognizes as a distinct limitation provision and not a tolling provision.

But regardless of whether the disability provision in § 2255(b) is thought of as a tolling provision or a limitation provision, the result is the same: Congress has expressly

1

included one exception and, it seems, has done so deliberately and perhaps to the exclusion of other exceptions. The Majority acknowledges the general rule applied in *TRW Inc. v. Andrews*: "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." 534 U.S. 19, 28 (2001) (internal quotation marks omitted). But my colleagues suggest that, for that rule to apply here, the disability provision in § 2255(b) would have to operate as a discovery rule or other "'judge-made doctrine'" such as equitable estoppel. *See* Maj. Op. at 13 (quoting *TRW*, 534 U.S. at 31 n.5). Although that reading comports with the result reached in *TRW*, where the Supreme Court refused to read a general discovery rule into a statute that explicitly included a limited discovery rule, the Supreme Court has taken a broader approach elsewhere.

In *United States v. Brockamp*, the Court declined to read equitable tolling into a statute that included a number of "explicit exceptions to its basic time limits," including the provision of distinct limitation periods to account for unique factual scenarios. 519 U.S. 347, 351 (1997). The Court explained that "those very specific exceptions do not include 'equitable tolling.'" *Id.* The Court thus concluded that "the explicit listing of exceptions [and other aspects of the statute's text] indicate to us that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." *Id.* at 352.

A sound argument can be made that that same rationale applies here. Congress appears to have considered the possibility that, when a civil cause of action is based on an injury inflicted on a minor, the general rule of starting the

2

limitation period from the time of accrual could lead to inequitable results. Rather than allowing the courts to apply traditional judge-made equitable doctrines to resolve the issue, Congress may be seen as having adopted a separate limitation period for persons who are under a legal disability, such as infancy, to address the very concern that the statute of limitations would otherwise run during that period of disability. *See* 18 U.S.C. § 2255(b). That "explicit exception[]" to the basic time limit of § 2255(b) thus may indicate that "Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." *Brockamp*, 519 U.S. at 351, 352.

That the objectives of § 2255(a) might be better served by adopting a more expansive limitation period, particularly in cases of child pornography or abuse leading to repressed memory, would not empower us to change a Congressional policy decision on how best to balance the competing objectives of vindicating the rights created in § 2255(a) and placing an outer time limit on such vindication for the sake of repose. *Cf. Pension Trust Fund for Operating Engineers v. Mortgage Asset Securitization Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013) ("[T]he purpose of statutes of limitations is to prevent stale claims … ."). In the end, however, it is not necessary for us to decide what can be discerned of Congressional intent on this point. The outcome for the claimant here is unaffected by the issue, for reasons persuasively set forth in the Majority opinion. I would therefore leave for another day the question of whether § 2255(b) permits application of the discovery rule.

3