**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1765
_____

PATRICK REGAN,
Appellant

v.

SECRETARY OF THE UNITED STATES NAVY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:23-cv-00246)
Magistrate Judge: Honorable Cynthia R. Eddy
_____

Argued on January 22, 2025

Before: HARDIMAN, McKEE, and AMBRO, *Circuit Judges*.

(Filed: February 21, 2025)

Vincent J. Krawiec [Argued]
Very Law
437 Grant Street
Suite 912
Pittsburgh, PA 15219

 *Counsel for Appellant*

Eric G. Olshan
Laura S. Irwin [Argued]
Office of United States Attorney
700 Grant Street
Suite 4000

Pittsburgh, PA 15219

*Counsel for Appellee*

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

Patrick Regan made a deal with the United States Navy: a full ride to medical school for four years of active-duty service. For over three years, the Navy performed its end of the bargain by funding Regan's osteopathic studies. But near the end of his program, Regan developed an autoimmune condition that, in the Navy's view, precluded him from keeping his end of the bargain. So the Navy honorably discharged Regan and demanded he reimburse the federal government for money spent on his education. After nearly eight years of resistance, Regan sued the Secretary of the Navy under the Administrative Procedure Act (APA), and the District Court dismissed the suit as barred by the statute of limitations. We will affirm.

I

Regan was admitted to Lake Erie College of Osteopathic Medicine in 2011. To pay for his education, he executed a Service Agreement under the Armed Forces Health Professions Scholarship Program. The terms of the agreement were straightforward: "in

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

return for 4 years of scholarship," Regan would "serve 4 years on extended active duty and serve 4 years in the Individual Ready Reserve." App. 34. But if Regan became "unable to commence the period of [Active Duty Service Obligation (ADSO)]" or "unable to complete [his] education program," he promised to "reimburse the United States for the total cost (lump sum plus interest) of advanced education paid by the US Government." *Id.* And in the event "any dispute [arose] over the terms or conditions" of the service agreement, Regan agreed that he would "exhaust [his] available administrative remedies prior to seeking judicial review," including "[e]xhaustion of the United States Navy Board for the Correction of Military Records (NBCMR) remedy." App. 38. With one narrow exception, that latter exhaustion requirement was "mandatory in every case." *Id.* Regan signed this agreement in November 2011.

For over three years, the federal government paid Regan's medical school tuition. But in December 2014—during the final year of his program—Regan was diagnosed with myositis, "an auto-immune disease that causes muscle inflammation." App. 22. In an effort to comply with the Service Agreement, Regan sought a "waiver of the physical standards" maintained by the Navy. *Id.* It responded with a letter in May 2015 deeming him "Not Physically Qualified (NPQ) for retention" and "recommend[ing] Administrative Separation and recoupment of funds expended for [his] education." App. 52. The letter informed Regan that, unless he submitted a resignation, he would be honorably discharged from the Navy in one month. Regan did not resign, so the Navy issued an involuntary separation order on June 20, 2015, honorably discharging him and triggering his obligation to repay the federal government over $300,000 in education

3

expenses.

Regan did not make timely payments and fell into delinquency. So the Navy referred his debt to the Department of the Treasury in September 2016. The Treasury made repeated efforts to collect on Regan's debt, including by offsetting his tax refunds and garnishing his wages. Regan resisted these efforts. For instance, in late 2016, he attempted to apply for a waiver of indebtedness from the Defense Finance and Accounting Service (DFAS), and he filed a hearing request on wage garnishment with Treasury. The first request was denied, and the second was ignored. Regan made a single payment on his debt in November 2016. After Regan sought similar relief again in 2019, DFAS notified him that his "debt remains valid and the amount is correct." App. 76. Regan's debt was ultimately transferred to a collection agency.

In addition to seeking relief from DFAS and Treasury, Regan filed an Application for Correction of Military Record with the Board for Correction of Naval Records (BCNR). In his 2020 application, Regan explained that "[r]ecords indicated [that he] had voluntarily left the Navy, but this is not true." App. 78. The Application "request[ed] the Navy let [him] out of" his debt because "[i]t was not [his] decision to leave the Navy." *Id.* He identified October 12, 2016, as both the "time the alleged error or injustice in the record occurred" and the "date of discovery." *Id.* (capitalization altered). The BCNR denied Regan's application in August 2021. While the agency determined that recoupment was appropriate, it also recommended "an alternative to repayment of the loan": Regan could "complete [his] obligation to the Department of the Navy through service as a civilian physician." App. 92–93.

4

Regan sued the Secretary of the Navy in February 2023. His complaint sought APA review "of a determination that" he was "financially responsible for over $300,000 of medical school debt." App. 19. Regan asked the Court to

> a. Compel Defendant, its agents, and employs to stay all collection and seizure activity including particularly, not exclusively, his income tax returns,
> b. Decree that Defendant has no right to remuneration, and that Defendant is estopped from enforcing collections under the terms and provisions of the Scholarship Agreement,
> c. Decree the debt null and void, and
> d. Award Plaintiff the costs of this litigation, including reasonable attorney's fees.

App. 30. The Secretary moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing, among other things, that Regan's claims were barred by the six-year statute of limitations governing actions under the APA. *See* 28 U.S.C. § 2401(a). The District Court agreed and dismissed Regan's claim. Regan timely appealed.

## II[1]

Suits against the federal government must generally be brought "within six years after the right of action first accrues." *Id.* Where, as here, a plaintiff sues under the APA,

---

[1] The parties consented to proceed before a Magistrate Judge. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 2201. We have jurisdiction under 28 U.S.C. § 1291. "Our review of a District Court's grant of a motion to dismiss under Rule 12(b)(1) or 12(b)(6) is plenary." *Bah v. United States*, 91 F.4th 116, 119 (3d Cir. 2024). Because we are reviewing a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and facial failure to establish subject matter jurisdiction under Rule 12(b)(1), we take the factual allegations in the complaint as true. *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007) (challenges under Rule 12(b)(6)); *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (facial challenges under Rule

his claim does not "accrue" for purposes of § 2401(a) until he "is injured by final agency action." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 825 (2024). Finality, in turn, has two requirements: "[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

The Secretary argues that Regan's APA claim accrued when he was discharged from the Navy in 2015. We agree. Regan's complaint seeks review of the validity of his medical school debt. And he sued only the Secretary of the Navy, who issued Regan an involuntary separation order in 2015. That decision "mark[ed] the consummation" of a decisionmaking process that began when Regan sought a waiver of physical standards in December 2014. *Id.* (citation omitted). And "legal consequences" no doubt "flow[ed]" from the Secretary's decision, which released Regan from his military responsibilities and triggered an obligation to repay the federal government. *Id.* In short, Regan's claim against the Secretary accrued upon his honorable discharge in June 2015.[2]

---

12(b)(1)). This is a facial 12(b)(1) challenge because the Navy does not challenge the jurisdictional facts in Regan's complaint, but rather whether those agreed-upon facts establish that his claim is barred by the statute of limitations.

[2] Regan's claim would fare no better if we instead focused on the DFAS's denial of his request for a waiver of indebtedness in 2016. Even setting aside the fact that DFAS is not part of the Navy, its action took place over six years before Regan sued the Secretary.

6

Regan insists that the Navy's decision to impose repayment obligations did not become final until the BCNR resolved his Application for Correction of Military Record in 2021. To be sure, "in an action for correction of military records, the claim first accrues when the [BCNR] issues its final decision, not when the service person is discharged." *Green v. White*, 319 F.3d 560, 563 (3d Cir. 2003) (cleaned up). But Regan did not sufficiently challenge the BCNR decision in his complaint, and he failed to identify it as a final agency action before the District Court. So this argument is not properly before us.

### III

Regan alternatively argues that equitable tolling saves his complaint. *See* 28 U.S.C. § 2401(a). Equitable tolling is appropriate where (1) "the defendant has actively misled the plaintiff respecting the plaintiff's cause of action," (2) "the plaintiff in some extraordinary way has been prevented from asserting his or her rights," or (3) "the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009). Even assuming equitable tolling is available, *see Kannikal v. Att'y Gen.*, 776 F.3d 146, 156 n.7 (3d Cir. 2015) (reserving the question), Regan still cannot show entitlement to this "extraordinary" relief, *Santos*, 559 F.3d at 197. Regan focuses on the first context, claiming the Secretary "mis[led] [him] into delaying judicial review under the promise of meaningful

---

And the federal government's subsequent recoupment efforts—all pursued by agencies other than the Navy—cannot start the clock anew.

7

administrative review." Regan Br. 16. He cites three examples of this alleged deceit: a 2019 Notice of Intent to Initiate Administrative Wage Garnishment Proceedings from Treasury, a 2020 Debt Waiver Denial Letter from DFAS, and a 2021 Correction Denial Letter from the BCNR.

We are not persuaded. The first two communications were issued by entities outside the Navy, so it is difficult to see how either one evidences deception on the part of the Secretary. And the Correction Denial Letter, while issued by the Navy, would not, as Regan suggests, "lead the average reasonable person to believe the agency had yet to complete its decision-making process." Regan Br. 15. Instead, the letter informed Regan that he could seek reconsideration "upon submission of *new matters*." App. 93 (emphasis added). And it defines "new matters" as "those not previously presented to or considered by the Board." *Id.* The BCNR letter therefore invited Regan to reopen his case with new claims, not to appeal existing ones to a higher authority within the agency. Because Regan has not shown that the Secretary actively misled him about his claim, he is not entitled to equitable tolling.[3]

*   *   *

---

[3] Regan also urges us to reverse "pursuant to the federal discovery rule." Regan Br. 12. The discovery rule "is an exception to the usual principle that the statute of limitations begins to run immediately upon accrual regardless of whether or not the injured party has any idea what has happened to him." *Stephens v. Clash*, 796 F.3d 281, 284 (3d Cir. 2015) (cleaned up). And "[i]n general, the discovery rule tolls the limitations period until the plaintiff learns of his cause of action or with reasonable diligence could have done so." *Id.* (cleaned up). But even assuming it applies to 28 U.S.C. § 2401(a), the discovery rule does not help Regan here because the record shows that he knew of his repayment obligations as early as 2015.

For the reasons stated, we will affirm the judgment of the District Court.