PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-1668

_____

KEVIN C. ROTKISKE,

Appellant

v.

PAUL KLEMM, Esq., DBA Nudelman, Klemm &
Golub, P.C., DBA Nudelman, Nudelman & Ziering, P.C.,
Klemm & Associates; NUDELMAN, KLEMM & GOLUB,
P.C., DBA Nudelman, Nudelman & Ziering, P.C., DBA
Klemm & Associates; NUDELMAN, NUDELMAN &
ZIERING, P.C., DBA Nudelman, Klemm & Golub, P.C.,
Klemm & Associates; KLEMM & ASSOCIATES, DBA
Nudelman, Klemm & Golub, P.C., Nudelman, Nudelman &
Ziering, P.C.; JOHN DOES 1-10

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-03638)
District Judge: Honorable Gene E. K. Pratter

_____

Argued January 18, 2017
En Banc Rehearing Ordered September 7, 2017
Reargued En Banc February 21, 2018

Before: SMITH, *Chief Judge*, McKEE, AMBRO,
CHAGARES, JORDAN, HARDIMAN, GREENAWAY, JR.,
VANASKIE, SHWARTZ, KRAUSE, RESTREPO,
BIBAS, and FISHER[*], *Circuit Judges*

(Filed: May 15, 2018)

Matthew B. Weisberg [Argued]
Weisberg Law
7 South Morton Avenue
Morton, PA 19070

Adina H. Rosenbaum, Esq. [Argued]
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC 20009
        *Counsel for Plaintiff-Appellant*

Carl E. Zapffe [Argued]
Fenton & McGarvey Law Firm
2401 Stanley Gault Parkway
Louisville, KY 40223
        *Counsel for Defendants-Appellees*

---

[*] Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.

―――――――

OPINION OF THE COURT

―――――――

HARDIMAN, *Circuit Judge*.

This appeal requires us to determine when the statute of limitations begins to run under the Fair Debt Collection Practices Act (FDCPA or Act), 91 Stat. 874, 15 U.S.C. § 1692 *et seq.* The Act states that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The United States Courts of Appeals for the Fourth and Ninth Circuits have held that the time begins to run not when the violation occurs, but when it is discovered. *See Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013) (per curiam); *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935 (9th Cir. 2009). We respectfully disagree. In our view, the Act says what it means and means what it says: the statute of limitations runs from "the date on which the violation occurs." 15 U.S.C. § 1692k(d).

I

The relevant facts of this case are undisputed. Appellant Kevin Rotkiske accumulated credit card debt between 2003 and 2005, which his bank referred to Klemm & Associates (Klemm) for collection. Klemm sued for payment in March 2008 and attempted service at an address where Rotkiske no longer lived, but eventually withdrew its suit when it was unable to locate him. Klemm tried again in January 2009,

3

refiling its suit and attempting service at the same address.[1] Unbeknownst to Rotkiske, somebody at that residence accepted service on his behalf, and Klemm obtained a default judgment for around $1,500. Rotkiske discovered the judgment when he applied for a mortgage in September 2014.

On June 29, 2015, Rotkiske sued Klemm and several associated individuals and entities asserting, *inter alia*, that the above-described collection efforts violated the FDCPA. Defendants moved to dismiss Rotkiske's FDCPA claim as untimely and the United States District Court for the Eastern District of Pennsylvania agreed. The District Court rejected Rotkiske's argument that the Act's statute of limitations incorporates a discovery rule which "delays the beginning of a limitations period until the plaintiff knew of or should have known of his injury." *Rotkiske v. Klemm*, No. 15-3638, 2016 WL 1021140, at *3 (E.D. Pa. Mar. 15, 2016). It found the "actual statutory language" sufficiently clear that the clock began to run on Defendants' "last opportunity to comply with the statute," not upon Rotkiske's discovery of the violation. *Id.* at *4. The Court also rejected Rotkiske's request for equitable tolling as duplicative of his discovery rule argument. *Id.* at *5.

Rotkiske timely appealed the judgment of the District Court and a panel of this Court heard oral argument on January 18, 2017. Prior to issuing an opinion and judgment, on

---

[1] In a certification accompanying Defendants' motion to dismiss, Klemm's managing partner stated that by the time of the second suit he had moved to a new firm named Nudelman, Nudelman & Ziering. Because Rotkiske has sued (among others) both Klemm and Nudelman, and the complaint's allegations do not distinguish between them, for the sake of simplicity we refer only to Klemm.

4

September 7, 2017, the Court sua sponte ordered rehearing en banc, and argument was held on February 21, 2018.

## II[2]

"Statutory interpretation, as we always say, begins with the text." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). The text at issue in this appeal reads:

> An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . within one year from the date *on which the violation occurs*.

15 U.S.C. § 1692k(d) (emphasis added). In declining Rotkiske's request to read the statute to imply a discovery rule, the District Court found that this language spoke clearly. We agree, and will affirm its judgment dismissing Rotkiske's untimely FDCPA claim.

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. Our review of an order dismissing a complaint for failure to state a claim is plenary, *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005), as is our review of questions of statutory interpretation, *United States v. Zavrel*, 384 F.3d 130, 132 (3d Cir. 2004). We will affirm an order dismissing a complaint only when the complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Statutes of limitation provide "security and stability to human affairs" and are "vital to the welfare of society." *Gabelli v. S.E.C.*, 568 U.S. 442, 448–49 (2013) (citations omitted). The standard rule is that a statute of limitations "commences when the plaintiff has 'a complete and present cause of action.'" *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)). By fixing an end point for civil liability, Congress advances "the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Gabelli*, 568 U.S. at 447–48 (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

We recently summarized the two basic models that "a legislature may choose" in fixing the start of a limitations period. *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 613 (3d Cir. 2015). First, a statute can run from "the date the injury actually occurred, an approach known as the 'occurrence rule.'" *Id.* Alternatively, Congress may delay the start of the limitations period until "the date the aggrieved party knew or should have known of the injury, that is, the 'discovery rule.'" *Id.*

Sometimes Congress clearly picks one model or another. When a statute of limitations begins to run only when "the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action," the discovery rule plainly applies. *See, e.g.*, 29 U.S.C. § 1451(f)(2); *Bay Area Laundry*, 522 U.S. at 204 (interpreting 29 U.S.C. § 1451(f)(2) to impose a discovery rule); *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) (interpreting similar language in 28 U.S.C. § 1658(b)(1)). Likewise, when Congress specifies that the "date on which the violation occurs" starts the

6

limitations period, the occurrence rule plainly applies. Accordingly, we hold that § 1692k(d)'s one-year limitations period begins to run when a would-be defendant violates the FDCPA, not when a potential plaintiff discovers or should have discovered the violation.

Congress does not, of course, always express statutes of limitations so directly. Instead of expressly enacting an occurrence or a discovery rule, Congress often articulates statutes of limitations in terms somewhere between those two poles. Some statutes of limitations begin when a "claim first accrue[s]." *See, e.g.*, *Gabelli*, 568 U.S. at 447–48 (interpreting 28 U.S.C. § 2462). Others start when the "cause of action arises" or when "liability arises." *See, e.g.*, *McMahon v. United States*, 342 U.S. 25, 27 (1951) (interpreting Suits in Admiralty Act); *Bay Area Laundry*, 522 U.S. at 201 (interpreting 29 U.S.C. § 1451(f)(1)). And we have little doubt that an exhaustive search would yield still other variations—some subtle, some stark. This appeal does not implicate the less-determinate language of those statutes, however.

III

Despite the "occurrence" language of the FDCPA, Rotkiske insists that the discovery rule applies. His argument relies on the text of the FDCPA, the policies underlying the Act, decisions of two of our sister courts of appeals finding a discovery rule in the FDCPA, and decisions of this Court applying a discovery rule to other federal statutes. We consider each point in turn.

7

## A

For starters, we reject summarily Rotkiske's assertion that the text of the FDCPA is silent on the discovery rule. *See* Rotkiske Supp. Br. 6. While it is true that the Act does not state *in haec verba* that "the discovery rule shall not apply," the Supreme Court made clear in *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001), that Congress may "implicitly" provide as much. In that Fair Credit Reporting Act (FCRA) case, the Court held that Congress had "implicitly excluded a general discovery rule by explicitly including a more limited one." 534 U.S. at 28. The same natural reading applies to the FDCPA in this appeal: Congress's explicit choice of an occurrence rule implicitly excludes a discovery rule. A quotidian example illustrates why this is so. When a bill states that payment is timely if it is "received at the bank by 5:00," it goes without saying that a check arriving at 6:00 is late even if it was postmarked a week earlier. Short of the express command that *TRW* tells us is not required, it is hard to imagine how Congress could have more clearly foreclosed the discovery rule.

## B

Rotkiske also highlights the remedial purpose of the FDCPA, which was enacted to combat the national problem of abusive debt-collection practices. Rotkiske Supp. Br. 10–11. Rotkiske emphasizes that those practices may involve fraud, deception, or self-concealing behavior such that the failure to apply the discovery rule would thwart the principal purpose of the Act. *Id.* at 11–13. He warns that "[a]bsent the discovery rule, vulnerable consumers will be left without redress if the harm caused by debt collectors' abusive or deceptive acts remains concealed for over a year." *Id.* at 16. We disagree for two reasons.

First, to the extent Rotkiske contends that the collection practices the FDCPA proscribes are inherently fraudulent, deceptive, or self-concealing, the statute belies his argument. Debtors are often vexed by overzealous or unscrupulous debt collectors precisely because of repetitive contacts by phone or mail. As the language of the FDCPA makes clear, many violations will be apparent to consumers the moment they occur. *See, e.g.*, 15 U.S.C. § 1692c(a)(1) (proscribing communication regarding debt collection "at any unusual time or place"); *id.* § 1692d (proscribing various forms of harassment in the service of debt collection, including "[t]he use of obscene or profane language" and "[t]he publication of a list of consumers who allegedly refuse to pay debts"); *id.* § 1692f(7) (proscribing "[c]ommunicating with a consumer regarding a debt by post card"). The Act's statute of limitations applies to all of its provisions, so we decline Rotkiske's invitation to interpret the Act as if it contemplated only concealed or fraudulent conduct.[3]

---

[3] The fact that the conduct proscribed by the FDCPA will usually be obvious to its victims distinguishes this case from our decision in *Stephens v. Clash*, 796 F.3d 281 (3d Cir. 2015). There, we considered a child sexual abuse claim governed by a statute that required a filing "within six years after the right of action first accrues." 796 F.3d at 285 (quoting 18 U.S.C. § 2255(b) (2012)). We reasoned that since "child pornography is most often distributed in secret and without the victim's immediate knowledge," the statute's fundamental objective of providing redress to exploited children would most often "be thwarted without the discovery rule." *Id.* at 285–86.

Second, to the extent that FDCPA claims *do* deal with "false, deceptive, or misleading representation[s]," *id.* § 1692e, nothing in the Act impairs the discretion district courts possess to avoid patent unfairness in such cases. As we shall explain, equitable tolling remains available in appropriate cases.

C

In addition to his textual and purposive arguments, Rotkiske asks us to follow the Ninth Circuit's decision in *Mangum v. Action Collection Service, Inc.*, and the Fourth Circuit's decision in *Lembach v. Bierman*, both of which implied a discovery rule in the Act's statute of limitations. We respectfully decline to do so.

Most fundamentally, neither opinion analyzed the "violation occurs" language of the FDCPA. In *Mangum*, the Ninth Circuit did not engage the text of the Act, relying instead on its expansive holding in *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998), that "the discovery rule applies to statutes of limitations in federal litigation." *Mangum*, 575 F.3d at 940. The Ninth Circuit did acknowledge that the Supreme Court had reversed its application of the *Norman-Bloodsaw* rule to the FCRA in *TRW*. *Id.* at 940–41. Nevertheless, after brushing aside *TRW*'s analysis as "food for thought . . . worth musing on," *id.* at 941, the majority of the panel in *Mangum* concluded that *TRW* neither overruled nor undermined that circuit's prior precedent regarding the general applicability of the discovery rule, *id.*[4]

---

[4] Judge O'Scannlain disagreed, relying on essentially the same reading of the statutory text that we adopt here.

Like the Ninth Circuit in *Mangum*, the Fourth Circuit in *Lembach* failed to engage the statutory text on its way to determining that a discovery rule would vindicate the policies underlying the FDCPA. *Lembach*, 528 F. App'x at 302. The Court reasoned—without mentioning equitable tolling—that because plaintiffs "had no way of discovering the alleged violation," the defendant "should not be allowed to profit from the statute of limitations when its wrongful acts have been concealed." *Id.* For these reasons, we decline to join either the Ninth or the Fourth Circuits in holding that the statute means something other than what it plainly says.

D

In addition to the opinions of our sister courts in *Mangum* and *Lembach*, Rotkiske places substantial weight on our opinion in *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994). In dictum in that case, we applied the discovery rule to Title VII, even though the statutory language required charges to be filed within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e).

The problem with Rotkiske's reliance on *Oshiver* is that its dictum is in obvious tension with the Supreme Court's decision in *TRW*. Instead of focusing on the statutory text (which we relegated to a footnote, 38 F.3d at 1385 n.3), we described a "general rule" that "the statute of limitations begins to run . . . [on] the date on which the plaintiff *discovers*" an injury rather than "the date on which the wrong that injures the plaintiff occurs," *id.* at 1385 (emphasis in original). The

*Mangum*, 575 F.3d at 944 (O'Scannlain, J., specially concurring).

Supreme Court's approach in *TRW* counsels in favor of reconsidering our earlier practice of presuming that federal statutes of limitations include an implied discovery rule. Indeed, to the extent that our decisions have relied on such a general presumption in applying a discovery rule to statutes that expressly begin to run when a violation "occurs," they cannot be reconciled with the Supreme Court's mandate that when "the text [of a statute] and reasonable inferences from it give a clear answer," that is "the end of the matter." *Brown v. Gardner*, 513 U.S. 115, 120 (1994) (citations omitted). *See Oshiver*, 38 F.3d at 1385 (presuming applicability of discovery rule); *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 590 (3d Cir. 2005) (same, following *Oshiver*).

Rather than imply a discovery rule by rote "in the absence of a contrary directive from Congress," *see, e.g.*, *Disabled in Action of Pa. v. S.E. Pa. Transp. Auth.*, 539 F.3d 199, 209 (3d Cir. 2008), we must parse each limitations period using ordinary principles of statutory analysis—beginning with the statutory text and then proceeding to consider its structure and context. *See, e.g.*, *TRW*, 534 U.S. at 28–33. As part of that inquiry into context, it may sometimes prove appropriate to consider whether there are "historical[] or equitable reasons" to adopt either an occurrence or a discovery rule. *Gabelli*, 568 U.S at 454. *See, e.g.*, *TRW*, 534 U.S. at 27–28 (noting that latent disease and medical malpractice, but not the FCRA, are contexts that "cr[y] out for application of a discovery rule"); *Stephens v. Clash*, 796 F.3d 281, 285–88 (3d Cir. 2015) (noting the secretive nature of trade in child pornography and the likelihood that an occurrence rule would frustrate Congress's objective to provide a remedy to blameless minor victims). This is not such a case, however,

12

because the text of § 1692k(d) plainly incorporates an occurrence rule.

IV

We conclude by emphasizing that our holding today does nothing to undermine the doctrine of equitable tolling. Indeed, we have already recognized the availability of equitable tolling for civil suits alleging an FDCPA violation. *See Glover v. F.D.I.C.*, 698 F.3d 139, 151 (3d Cir. 2012) (considering and rejecting an equitable tolling argument where no extraordinary barrier existed to plaintiff's suit). We do not reach the question in this case only because Rotkiske failed to raise it on appeal. Accordingly, our opinion should not be read to foreclose the possibility that equitable tolling might apply to FDCPA violations that involve fraudulent, misleading, or self-concealing conduct. *See, e.g.*, *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348 (1874) ("[W]here the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar . . . does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it . . . .").[5]

---

[5] If Rotkiske had preserved reliance on equitable tolling on appeal, then Judges McKee, Ambro, Vanaskie, and Shwartz would have remanded to allow the District Court to consider whether he would be entitled to rely on this doctrine because our precedent had not previously recognized that a defendant's self-concealing conduct may be a basis for equitable tolling.

V

Civil actions alleging violations of the Fair Debt Collection Practices Act must be filed within one year from the date of the violation. Because Rotkiske's action was filed well after that period expired, his action was untimely. We will affirm the judgment of the District Court.