NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-3187, 16-3188, 17-1548
_____

WM. C. PLOUFFE, JR.,
in his Individual Capacity and as a Private Attorney General

v.

F. JAVIER CEVALLOS, President of Kutztown University of Pennsylvania,
As Employee, Officer, Supervisor, and/or Policymaker in his Individual
and Official Capacities; ANNE ZAYAITZ, Dean of the College of
Liberal Arts and Sciences of Kutztown University of Pennsylvania,
as Employee, Officer, Supervisor, and/or Policymaker in her Individual and Official
Capacities; SHARON PICUS, Executive Director of Human Resources of
Kutztown University of Pennsylvania, as employee, Officer, Supervisor, and/or Policy
Maker in her Individual and Official Capacities; ALEXANDER PISCIOTTA, Chair and
Professor, Criminal Justice Department of Kutztown University as Employee, Officer,
Supervisor, and/or Policy Maker in his Individual and Official Capacities;
DEBORAH SEIGER, Professor, Criminal Justice Department of Kutztown University,
in her Individual and Official Capacities; PIETRO TOGGIA, Professor,
Criminal Justice Department of Kutztown University, in his Individual and Official
Capacities; MARK RENZEMA, Professor, Criminal Justice Department of Kutztown
University, in his Individual and Official Capacities; MAHFUZUL KHONDAKER,
Professor, Criminal Justice Department of Kutztown University, in his Individual and
Official Capacities; JONATHAN KREMSER, Professor, Criminal Justice Department of
Kutztown University, in his Individual and Official Capacities; KEITH LOGAN,
Professor, Criminal Justice Department of Kutztown University, in his Individual and
Official Capacities; GARY CORDNER, Professor, Criminal Justice Department
of Kutztown University, in his Individual and Official Capacities; ANN MARIA
CORDNER, Professor, Criminal Justice Department of Kutztown University,
in her Individual and Official Capacities; JOHN DOES, Employees, Officers,
Supervisors, and/or Policy Makers of Kutztown University, and/or Pennsylvania State
System of Higher Education (PASSHE), In their Official and Individual Capacities;
ROBERT WATROUS, Dean of Student Services of Kutztown University, as Employee,
Officer, Supervisor and/or Policy Maker in his Individual Capacity; JOHN
CAVANAUGH, Chancellor of Pennsylvania State System of Higher Education
(PASSHE), as Employee, Officer, Supervisor, and/or Policy Maker in his Individual

Capacity; MICHAEL MOTTOLA, Human Resources/Labor Relations Officer of Pennsylvania State System of Higher Education (PASSHE), as Employee, Officer, Supervisor, and/or Policy Maker in his Individual Capacity; KUTZTOWN UNIVERSITY, A Subordinate Entity and/or Agency of the Commonwealth of Pennsylvania

> Wm. C. Plouffe, Jr.,
> Appellant in 16-3187 & 17-1548

v.

MICHAEL GAMBONE, Professor, History Department of Kutztown University and member, representative, agent, officer, and/or employee of APSCUF in his individual capacity and his official capacity as an APSCUF member, agent, representative, officer and/or employee of APSCUF; STEVE HICKS, President of APSCUF in his individual capacity and his official capacity as an APSCUF member, agent, representative, supervisor, officer, employee, and/or policymaker of APSCUF; JULIE REESE, Director of APSCUF in her individual capacity and her official capacity as an APSCUF member, agent, representative, supervisor, officer, employee, and/or policymaker of APSCUF; ASSOCIATION OF PENNSYLVANIA STATE COLLEGE & UNIVERSITY FACULTIES; JOHN DOES, in their individual capacity and her official capacity as an APSCUF member, agent, representative, officer, supervisor, employee and/or policymaker of APSCUF; PIETRO TOGGIA, Professor, Criminal Justice Department of Kutztown University, in his individual capacity and in his individual and his official capacity as an APSCUF member, agent, representative, supervisor, officer, employee, and/or policymaker of APSCUF; MARK RENZEMA, Professor, Criminal Justice Department of Kutztown University, in his individual capacity and in his individual and his official capacity as an APSCUF member, agent, representative, supervisor, officer, employee, and/or policymaker of APSCUF; JONATHAN KREMSER, Professor, Criminal Justice Department of Kutztown University, in his individual capacity and in his individual and his official capacity as an APSCUF member, agent, representative, supervisor, officer, employee, and/or policymaker of APSCUF

> Wm. C. Plouffe, Jr.,
> Appellant in 16-3188 & 17-1548

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 5-10-cv-01502 & 5-11-cv-06390)
District Judge:  Hon. Edward G. Smith

_____

2

Submitted Under Third Circuit LAR 34.1(a)
June 10, 2019

Before:   JORDAN, BIBAS, and NYGAARD, *Circuit Judges.*

(Filed: June 12, 2019)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

This is a consolidated appeal of two employment-related civil actions stemming from William C. Plouffe, Jr.'s firing by Kutztown University.  The first action was against the University and related individuals, and the second action was against his labor union and related individuals.  The first ended when Plouffe's whistleblower and Title VII and Title IX claims went to trial, and a jury found, the defendants not liable.  The second one ended after the union and certain individuals were dismissed and then summary judgment was granted to the remaining individual defendants.  For the following reasons, we will affirm.

---

\* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

# I. BACKGROUND

## A. Factual Background[1]

Plouffe was hired by Kutztown University, part of the Pennsylvania State System of Higher Education, as a tenure-track assistant professor in the Criminal Justice Department. His employment contract was renewable annually. The first year evaluation he received from the Performance, Evaluation, and Tenure Committee was satisfactory, but it did note some issues with disputes he had with his co-workers. Alexander Pisciotta, the chair of the Department, completed a separate review, which was "[v]ery [g]ood" but, again, included some less favorable comments regarding similar matters. (App. at 611.) Following those evaluations, Plouffe's contract was renewed for a second year.

A few months into his second year at Kutztown, Plouffe, along with two other Department members, was named to a search committee to recommend a temporary faculty member. According to Plouffe, his colleagues on the committee told him that a

---

[1] The facts as described here are drawn from Plouffe's statement of undisputed facts in response to the defendants' motion for summary judgment. Whether they are actually undisputed is, for present purposes, immaterial. *Cf. Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 593 n.9 (3d Cir. 2005), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 1018) (noting that whether a fact was disputed was "immaterial" because "either version of the facts leads … to the same legal conclusion"). We take Plouffe's version of the facts to be true. *See Carrasca v. Pomeroy*, 313 F.3d 828, 834 (3d Cir. 2002) (stating that the non-movant's version of the facts is accepted as true at summary judgment). We also review Plouffe's dismissed claims in the light most favorable to his version of events, treating all factual allegations in the complaint as true. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Because Plouffe's efforts on appeal are in vain even when the facts are viewed in his favor, he cannot prevail under the stricter standard of review governing the post-trial motions. *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016).

particular candidate, Michael Pittaro, was favored and was going to be hired. Plouffe discovered, however, that Pittaro did not have the required qualifications, which, in addition to other concerns about his candidacy, made him ineligible to be hired, or even interviewed. Plouffe raised those concerns in the Department but was met with a hostile response, and Pittaro was interviewed. As those events unfolded, Plouffe filed a whistleblowing complaint with Kutztown Dean Anne Zayaitz, with the school's Provost, and with its Office of Social Equity, regarding Pittaro's deficient candidacy. His complaint led to the Office of Social Equity eventually concluding that Pittaro was not eligible to be hired.

In the wake of those events, Plouffe's relationship with other faculty members in the Department deteriorated, and a detailed complaint about his poor relationships with other Department members was sent to Dean Zayaitz, "raising over 140 complaints against Plouffe[.]" (App. at 620.) An investigation was held, and Dean Zayaitz met with each Department member individually.[2] Four days later, Sharon Picus, the University's Human Relations Director, was directed to conduct an investigation. She interviewed numerous individuals, including Plouffe. Picus then prepared a report but did not save her underlying notes, despite a school policy requiring all documents relating to discipline to be maintained for seven years. F. Javier Cevallos, the President of Kutztown University, then had a pre-disciplinary conference with Plouffe.

---

[2] Plouffe says he was "interrogated" by Dean Zayaitz without adequate advance notice or the required union representation present. (App. at 621.)

5

After that meeting, Plouffe was formally terminated for failing to develop constructive relationships and for contributing to significant conflicts that prevented the Criminal Justice Department from functioning. He was, however, paid the balance of his salary for his second-year contract.

**B.     Procedural History**[3]

Representing himself, Plouffe sued the University and numerous individuals associated with it (the "University case"), advancing claims including (1) violations of the First Amendment, pursuant to 42 U.S.C. § 1983; (2) violations of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; (3) conspiracy, pursuant to 42 U.S.C. § 1983; (4) gender discrimination under Title VII and Title IX; and (5) a violation of the Pennsylvania Whistle Blowers Act. He later filed a complaint against the Association of Pennsylvania State College and University Faculties (the "Union"), a labor union that represents Kutztown's faculty, and various individuals associated with the Union (the "Union case"). Combined, these cases have been ongoing for eight years.

The litigation began with the filing of the University case. After Plouffe amended that complaint, the defendants filed motions to dismiss. Plouffe responded and also filed a motion to disqualify defense counsel because the Attorney General's office was representing both the University and the individual defendants. The motion to disqualify was denied, and the defendants' motions to dismiss were granted in full as to the

_____

[3] Because we write only for the parties, only the relevant details from the cases' long procedural histories are included here.

6

University and in part as to the individual defendants. Plouffe filed a motion for a default judgment against the remaining defendants, due to "[s]erious [m]isconduct[.]" (App. at 190.) That motion was denied, but Plouffe renewed it based on his allegations of "[s]poliation of evidence" (App. at 226), and that motion too was denied. The District Court then ordered that "the plaintiff shall not file any more motions" until we had ruled on motions Plouffe filed seeking leave to pursue interlocutory appeals. (App. at 244.)

Plouffe responded by filing the Union case, which largely tracked the facts in the University Complaint. He asserted similar § 1983 claims against new individuals, along with new claims, including a "*Weingarten*" claim[4] and a claim for breach of fiduciary duty and failure to provide fair representation.

The defendants moved to dismiss the complaint, and the District Court granted that motion, except as to certain § 1983 claims as to certain defendants. The Court dismissed Plouffe's *Weingarten* claim because "that right arises under the National Labor Relations Act[,] … which does not afford protection to state employees." (App. at 1886.) It dismissed his breach of fiduciary duty and fair representation claims because he had not alleged sufficient facts to demonstrate the requirement of bad faith. The Court denied as futile any effort to amend. That eliminated all claims against the Union but left claims against some individuals.

---

[4] A *Weingarten* claim is based on the "right to have a union representative at an investigatory interview … under § 7 of the [National Labor Relations Act, 29 U.S.C. § 157]." *Gambone*, 2012 WL 2343381, at *6.

The University case then became active again. Plouffe added a gender discrimination claim against the University, invoking Title VII, 42 U.S.C. § 2000e et seq, and Title IX, 20 U.S.C. § 1681 et seq, of the Civil Rights Act. And, in 2013, he filed the now-operative complaint in that case, his "Fifth Amended Complaint[.]" (App. at 67.) Kutztown University answered, but the remaining individual defendants did not. At that point, Plouffe filed a motion for appointment of counsel, and Brian Puricelli was appointed to represent him in both cases. After a year, Puricelli moved to withdraw due to difficulties with the attorney-client relationship. While that motion was pending, the defendants in both cases moved for summary judgment. Puricelli agreed to continue representing Plouffe until the conclusion of summary judgment proceedings, but their relationship again broke down, and Puricelli filed a second motion to withdraw. That motion was granted.

The Court then turned to the summary judgment motions. It raised with the parties the fact that, despite the elapse of two years, the individual defendants had not filed an answer to the operative complaint. After a brief discussion, the Court gave the individual defendants leave to file answers, and they promptly did so.

The District Court then ruled on the summary judgment motions in both cases. In the University case, the Court determined that Plouffe's First Amendment retaliation claim failed because his statements about Pittaro's job candidacy were made within the scope of employment duties Plouffe had as a member of the search committee. He was not speaking as a citizen. The Court further determined that Plouffe's due process claims failed because he neither had a protected property interest nor a liberty interest in his job,

8

and, to the extent those claims were premised on Pennsylvania's administrative agency statute, that the statute does not authorize a private cause of action in equity, nor is there a private right of action for damages under the Pennsylvania Constitution. As Plouffe's First and Fourteenth Amendment claims failed, his conspiracy claim failed as well because, absent any underlying constitutional violation, there could be no § 1983 conspiracy liability. In the University case, the District Court thus granted the defendants' motions for summary judgment as to Plouffe's First Amendment, due process, and conspiracy claims. But, it found triable issues of fact existed with respect to Plouffe's whistleblower and gender discrimination claims. In a follow-on opinion, the District Court also granted summary judgment to the remaining individual defendants in the Union case on the remaining § 1983 claims, thereby resolving all claims in that case.

After an eight-day trial on the whistleblower and gender discrimination claims in the University case, the jury returned a defense verdict. Plouffe filed a motion for a new trial, which the District Court denied.

He timely filed his appeals in both cases.

## II.    DISCUSSION[5]

Plouffe argues that the District Court made a multitude of errors, including in its rulings on non-merits technical issues before trial, its grant of the motion to dismiss his

---

[5] The District Court had subject matter jurisdiction over Plouffe's federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). It had supplemental jurisdiction over Plouffe's state law claims pursuant to 28 U.S.C. § 1367(a). We have jurisdiction over this appeal under 28 U.S.C. § 1291.

9

*Weingarten* claim and his claim for breach of fiduciary duty and fair representation, its grant of summary judgment for the defendants on his First Amendment and due process claims, its rulings during trial, and its failure to set aside the jury's verdict against him. None of his arguments win.

Regarding the pre-trial issues, Plouffe says that the Court erred in not disqualifying defense counsel due to a conflict of interest, not entering a default judgment due to the defendants' alleged "serious misconduct" or spoliation of evidence, and not admitting certain "undisputed facts" into evidence. He also contends that the Court erred by granting his appointed attorney leave to withdraw and by allowing, sua sponte, certain defendants to file untimely answers, some of which asserted affirmative defenses. We review the pretrial rulings for abuse of discretion. *See, e.g.*, *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980) (applying that standard to disqualification of counsel). Each of Plouffe's arguments clearly fails under that standard.

As to his argument that defense counsel should have been disqualified, it is questionable at best whether a plaintiff has standing to raise a conflict of interest between defense parties and their counsel. *See Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998) (questioning whether a plaintiff ever has standing regarding a conflict of interest on the part of the defendants' counsel and rejecting a plaintiff's "conclusory charge of institutional 'conflict of interest[]'" against the Department of Justice's representation of separate defendants). Leaving that aside, however, we note that sovereign states are not like private parties in all respects and that it is a regular practice for an Attorney General's office to represent state agencies and state employees concurrently in civil

10

litigation. *Cf. Granberry v. Byrne*, No. 11-4329, 2011 WL 4852463, at * 5 (E.D. Pa. Oct. 13, 2011) (surveying Eastern District of Pennsylvania case law in the context of 42 U.S.C. § 1983). We see no reason to interfere with that practice in this case.

As to Plouffe's default judgment argument, entering such a judgment in a contested matter is a drastic and disfavored remedy, and choosing to decide a case on its merits is preferred. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008) (noting that "default judgments are generally disfavored in our circuit"). Thus, it is difficult to envision a circumstance in which choosing to decide a case on the merits would be an abuse of discretion. Moreover, spoliation is only an issue if the "destruction [of evidence] was intentional[.]" *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (alteration in original) (citation omitted). It is not an issue "where the destruction was a matter of routine with no fraudulent intent." *Id.* Here, Picus discarded her notes after compiling her final report and before Plouffe had been fired. Plouffe alleged in his motion that "Picus reasonably knew that a law suit was going to result" (App. at 250), but that is pure conjecture and insufficient to raise a fact issue about whether there was spoliation.

Plouffe's argument that the undisputed facts at summary judgment should have been admitted into evidence is equally flawed. It is within a district court's sound discretion to determine the admissibility of evidence, and there was no abuse of that discretion in declining to admit at trial what was only uncontested for purposes of summary judgment. *See, e.g.*, *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("'Concise Statement of Undisputed Facts' … is not evidence[.]");

11

*Rosales v. City of Chico*, No. 2:14-02152, 2015 WL 6167740, at \*7 n.3 (E.D. Cal.

Oct. 20, 2015) ("Statements of undisputed facts are not evidence[.]").

Plouffe's other arguments concerning pre-trial rulings also fall short. Plouffe, a

civil litigant, "possess[es] neither a constitutional nor a statutory right to appointed

counsel." *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). Thus, the Court

was permitted to allow his attorney to withdraw. The District Court also properly

allowed the defendants to file tardy answers to Plouffe's Fifth Amended Complaint

because Plouffe was not prejudiced, "the defendant[s] appear[ed] to have a litigable

defense[,]" and the delay was not intentional. *Chamberlain v. Giampapa*, 210 F.3d 154,

164 (3d Cir. 2000).

As to the grant of the motion to dismiss the *Weingarten* claim and the breach of

fiduciary duty and fair representation claim, Plouffe's arguments are similarly

unpersuasive. He ignores that, while the National Labor Relations Act creates federal

rights, it does not cover public employers or their employees, and thus does not

encompass his employment with the University. *Amalgamated Transit Union v. Byrne*,

568 F.2d 1025, 1040 n.12 (3d Cir. 1977). As to his claim of breach of fiduciary duty and

fair representation, Plouffe contends that the Court should have given him leave to amend

his complaint because leave should be freely given. Nonetheless, leave to amend is not

an absolute right. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir.

2014). Because he did not and has not offered additional allegations sufficient to state a

claim, the District Court did not abuse its discretion in deciding that further leave to

12

amend would be futile, especially since Plouffe had already had opportunities to amend. *Id.*; *see Gambone*, 2012 WL 2343381, at \*11 (noting previous opportunity to amend).

As to the grant of summary judgment on his First Amendment claims, Plouffe contends that when he reported Pittaro's ineligibility to be hired he was speaking as a "citizen[.]" (Opening Br. at 14.)  For support, he relies on *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 988 (3rd Cir. 2014), which he says "specifically recognized that the reporting of misconduct does not fall within the official duties of a teacher." (Opening Br. at 31.)  Moreover, he argues that whether he was speaking as an employee or as a citizen is a determination that should be made by the finder-of-fact.[6]

For the First Amendment to apply to an employee's speech, the employee must have spoken "as a citizen, not as an employee," and the speech must "involve[] a matter of public concern." *Bradley v. W. Chester Univ. of Pa. State Sys. Of Higher Ed.*, 880 F.3d 643, 650-51 (3d Cir. 2018) (citation omitted).  Whether an individual spoke as an employee requires examination of the content, form, and context of the relevant speech. *See Rankin v. McPherson*, 483 U.S. 378, 384-85 (1987) (concluding that whether an employee was speaking as a citizen "address[ing] a matter of public concern must be

---

[6] Plouffe also asserts that summary judgment was improper because the defendants "reargue[d] in summary judgment what had already been decided on a motion to dismiss." (Opening Br. at 30.)  But summary judgment is often granted on the same grounds on which a motion to dismiss was previously denied. *Wiest v. Tyco Electrs. Corp.*, 812 F.3d 319, 329-330 (3d Cir. 2016).  The standards applicable at those different stages will at times lead to different results. *Id.*

determined by the content, form, and context of a given statement"). "[W]hen public employees speak 'pursuant to their official duties,' that speech does not receive First Amendment protection." *Dougherty*, 772 F.3d at 987 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Contrary to Plouffe's assertion, "[t]his is a question of law" and not one for the finder-of-fact. *Id.* Here, Plouffe was on the search committee as part of his employment. He was only aware of the "misconduct" he reported because of his role on that committee. *Cf. Bradley*, 880 F.3d at 652-53 (determining that a plaintiff whose speech occurred at a meeting was not protected by the First Amendment because she was in part employed to attend the meeting). Accordingly, the District Court did not err in deciding that Plouffe spoke as an employee, and his speech was not protected by the First Amendment.

As to the grant of summary judgment on Plouffe's substantive due process claims, he argues that the District Court wrongly concluded that he did not "have liberty [or] property interests in his continued employment." (Opening Br. at 10.) He says he has a property interest and a liberty interest in his reputation. (Opening Br. at 32-34.) We have held, however, that even tenured public employment is not a fundamental liberty or property interest protected by substantive due process. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000). Regarding a claimed liberty interest in one's reputation, we have held that, in addition to reputational harm, a plaintiff must show the "deprivation of some additional right or interest[,]" which Plouffe has not done. *Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir. 2008) (citation omitted). Citing *Gikas v. Washington Sch. Dist.*, 328 F.3d 731, 732 (3d Cir. 2003), Plouffe also attempts to base a

14

due process claim on Pennsylvania Administrative Agency Law and notes that "[t]he Third Circuit has recognized … that violations of state procedural protections provide a basis for a federal due process claim." (Opening Br. at 34.) Even if he could rightly turn his administrative law claim into a constitutional one, a state procedural protection cannot provide a basis for a federal due process claim unless the plaintiff has an underlying property interest, which Plouffe does not.[7] *Gikas*, 328 F.3d at 732-33.

Plouffe next contends that errors during trial entitle him to a new trial. Specifically, he claims that the Court "improperly conducted the voir dire in front of the jury[,]" (Opening Br. at 45), that witness tampering occurred, that the Court made erroneous evidentiary rulings, that it failed to direct adverse witnesses to answer questions while on the stand, that it improperly refused to allow both refreshing of witness memories and impeachment testimony, that it improperly criticized the qualifications of Plouffe's expert witness in front of the jury and improperly limited the scope of the expert's testimony, and that it gave him insufficient time to fully present his case. He also argues that the jury's quick decision was based on insufficient evidence and that "[t]he law clearly recognizes that an unusually quick verdict can be grounds for a

---

[7] Under Supreme Court doctrine, a constitutional claim will only lie for a reputational injury if, in addition to the stigma, there is some additional constitutional violation. *Paul v. Davis*, 424 U.S. 693, 701 (1976). To the extent Plouffe's argument can be construed as using his "rights" under Pennsylvania administrative law to support his stigma-plus argument, that argument would also fail because no private right of action exists. *See* 2 Pa. Cons. Stat. § 702 (providing a right only to appeal an adjudication of a Commonwealth agency).

15

new trial."[8]  (Opening Br. at 48.)  We respect a court's discretion in "matters of trial procedure" because a trial judge "is in a far better position" than an appellate court to determine what procedures will lead to a fair and efficient trial in a specific case.  *Reed v. Phila., Bethlehem & New England R.R. Co.*, 939 F.2d 128, 133 (3d Cir. 1991).  After reviewing the record, we find no abuse of discretion in any of the trial rulings that Plouffe protests.

Finally, Plouffe says that the jury's verdict for the defense on his whistleblower and gender discrimination claims was based on insufficient evidence.  That assertion is based on his further assertion that he presented "overwhelming evidence" in his favor, while the defendants only presented "general allegations of misconduct" and "bare assertions[.]"  (Opening Br. at 48, 54, 57, 59.)  A new trial should only be granted on weight-of-the-evidence grounds when "a miscarriage of justice would result if the verdict were to stand."  *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992) (citation omitted).  A district court should not "substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'"  *Id.* (citation omitted).  Here, the jury could properly have reached a verdict for the defense based on the evidence presented, and the District Court did not err in denying Plouffe's motion.

---

[8]  Plouffe claims that "[t]he jury was charged just before lunch and returned with a verdict just after lunch" – too short a time "to evaluate a two week trial with extensive evidence!"  (Opening Br. at 48.)

**III.    CONCLUSION**

Finding no error or abuse of discretion, we will affirm the judgment of the District

Court.